

**IN THE
TENTH COURT OF APPEALS**

No. 10-23-00086-CV

**IN THE INTEREST OF R.J.N., A CHILD**

**From the County Court at Law No. 1
Johnson County, Texas
Trial Court No. CC-D20180168**

**MEMORANDUM OPINION**

C.N. appeals the termination of her parental rights. In four issues, she complains

of the sufficiency of the evidence to support the judgment. We affirm.

**Background**

The Texas Department of Family and Protective Services sought to terminate

C.N.'s parental rights to her son, R.J.N. After a final trial on the merits, the trial court

terminated her rights pursuant to Texas Family Code Section 161.001(b)(1)(D), (E), and

(O) and a finding that termination was in the best interest of the child. *See* TEX. FAM. CODE

ANN. §§ 161.001(b)(1)(D), (E), (O); 161.001(b)(2). The order of termination approved and

incorporated the mediated settlement agreement between intervenors Mollie and Kristin

Myers, the foster parents, and C.B., the child's maternal grandmother. Subject to termination of C.N.'s parental rights, that agreement provides that the Department will look first to the Myerses as a potential adoptive placement for R.J.N., and C.B. will have visitation rights.

## Termination Proceedings

C.N., the mother of R.J.N., was incarcerated at the time of his birth in 2018. On July 19, 2019, the court appointed C.B., the child's maternal grandmother, permanent managing conservator. The Department of Family and Protective Services took possession of the child on June 21, 2021 and filed a Petition for Intervention for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship the following day. The trial court signed an emergency order naming the Department as temporary sole managing conservator of R.J.N. The child was placed with foster parents, Mollie and Kristin Myers.

At the hearing on the petition, the Department's investigator testified that C.N. was concerned that C.B. may be using drugs and not properly caring for R.J.N. But C.N., who had just been released from prison, "was in the process of turning herself back in for a violation" and had no contact with R.J.N. C.N. was not able to provide a safe and stable environment for the child. However, she allowed him to remain with her mother in unsafe and unsanitary conditions where he was exposed to drugs thereby endangering his emotional or physical well-being. The investigator had significant concerns about

C.N.'s history of drug use, as well as C.B.'s drug use. The department has removed other children from C.N. and K.B., the biological father. Both parents have a criminal history, neither have been involved in R.J.N.'s life, and neither participated in services through the department. C.N. received probation for endangerment and abandonment of a child and tampering with and fabricating physical evidence. She was also assessed jail time for another charge of abandonment and endangerment of a child and criminal negligence. The investigator recommended termination.

The caseworker assigned to the case testified that although she talked to C.N. "on and off," she had difficulty contacting her, and their contact was minimal. C.N. would not provide her address or participate in court proceedings due to the outstanding warrant and her fear of Child Protective Services and of being picked up by the police. A service plan has been in place for C.N. since August 2021. She was required to complete a psychological evaluation, parenting class, counseling, a substance abuse assessment, and random drug testing. She was also required to maintain employment and a safe and stable home. C.N. knew she needed to "work services" but they were never set up due to C.N.'s instability. There was no way for service providers to contact her. C.N. purportedly participated in an online parenting class but there is no supporting documentation, and she has not done any of the other services. During this investigation, C.N. had another baby. That baby was removed and placed into the same foster home as R.J.N. C.N. has had no contact with R.J.N. and has made no effort to have a relationship

with him.  The caseworker does not believe C.N. can provide a safe and stable home for R.J.N.

C.N. testified that she is currently drug-free, attending college, and in the process of starting services for this case.  She explained that, when she had a stable home, she did not provide an address, and then was unable to comply with the service requirements, because of the outstanding warrant.  She did not want to go back to jail where she would be unable to meet the service requirements.  That case has been resolved and she intends to comply with service requirements going forward.  She explained that she has moved around, been evicted once, was homeless for a time, and often did not have a working phone.  C.N. has two children who were placed with her father because she was unable to care for them.  C.N. stated that she does not want custody.  She wants R.J.N. placed with her mother.  She admitted that she has been in and out of jail his entire life and her actions have impacted him.

STANDARD OF REVIEW

Involuntary termination of parental rights is a serious matter that implicates fundamental constitutional rights.  *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Although parental rights are of constitutional magnitude, they are not absolute.  *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).  Termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *Holick*, 685 S.W.2d at 20.

Parental rights may be terminated if clear and convincing evidence shows (1) the parent has engaged in one of the statutory grounds for termination and (2) termination is in the child's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear and convincing means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id*. § 101.007.

Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. at 630-31.

Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* at 631. In a factual sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. *Id*. Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id*.

The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). The appellate court may not second guess the factfinder's resolution of a factual dispute by relying on disputed evidence or evidence the factfinder could have rejected as not credible. *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

PREDICATE TERMINATION FINDINGS

In her first, second, and third issues, C.N. asserts that the evidence is legally and factually insufficient to support the court's findings that termination is warranted under Family Code Section 161.001(b)(1)(D), (E), and (O).

Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam). However, due to the potential application of Section 161.001(b)(1)(M), we must consider the sufficiency of the evidence pursuant to subsections (D) and (E) when raised on appeal. *See id*. at 234-35. Due process requires a sufficiency review if parental rights are terminated pursuant to Section 161.001(b)(1)(D) or (E) because that ground becomes a basis to terminate that parent's rights to other children pursuant to Section 161.001(b)(1)(M). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(M).

Subsection (E) authorizes termination if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the

physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). In this context, "endanger" means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). It is not necessary that the conduct was directed at the child or that the child suffered actual injury. *Id.* The relevant inquiry is whether evidence exists that the endangerment was the result of the parent's conduct, including acts, omissions, and failures to act. *In re S.L.W.*, 529 S.W.3d 601, 609 (Tex. App.—Texarkana 2017, pet. denied). The specific danger to the child's well-being may be inferred from the parent's misconduct. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App—Houston [14th Dist.] 2014, pet. denied).

The statute requires a voluntary, deliberate, and conscious course of conduct by the parent. See *In re V.A.*, 598 S.W.3d 317, 331 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). We may consider actions and inactions occurring both before and after the child's birth. *Id.* As a general rule, subjecting children to a life of uncertainty and instability endangers the children's physical and emotional well-being. *In re M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). Evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent may establish an endangering course of conduct. *In re S.R.*, 452 S.W.3d at 360-61. Evidence of drug use may constitute evidence of endangerment. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

We consider whether the evidence is legally and factually sufficient to support a finding that C.N. engaged in conduct which endangers the physical or emotional well-being of the child, thus authorizing termination under Section 161.001(b)(1)(E).

C.N. has a history of criminal activity and drug use. That criminal activity included endangerment and abandonment of a child, establishing an endangering course of conduct. *See In re S.R.*, 452 S.W.3d at 360-61. She was incarcerated at the time of R.J.N.'s birth and has never had any contact with him. When she was released from prison, she made no effort to contact him. Instead, she engaged in a course of conduct focused on evading Child Protective Services and the police. Her two older children and her youngest child were removed from her custody in separate proceedings spanning several years before and after R.J.N.'s birth. A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *See In re D.M.*, 58 S.W.3d 801, 812-13 (Tex. App.—Fort Worth 2001, no pet.).

C.N. denied none of this and admitted that she deliberately refused to provide her contact information to avoid being arrested, knowing she could not comply with service requirements. She also admitted that, since getting out of jail, she had moved around, been evicted, and was homeless for a time. She also acknowledged that her actions have impacted R.J.N. C.N's conduct over multiple years constitutes a voluntary, deliberate,

and conscious course of conduct subjecting R.J.N. to a life of uncertainty and instability. *See In re J.O.A.*, 283 S.W.3d at 345; *In re V.A.*, 598 S.W.3d at 331.

Although C.N. testified that she is currently drug free, attending college, and in the process of starting services, even if believed, the trial court is entitled to determine the weight to give this testimony. *See In re A.B.*, 437 S.W.3d at 503. Although significant, evidence of improved conduct, especially of short duration, does not conclusively negate the probative value of a parent's history of drug use and irresponsible choices. *See In re J.F.-G.*, 627 S.W.3d 304, 316-17 (Tex. 2021).

C.N. contends that Section 161.001(b)(1)(E) is vague and claims that a reading of subsection (b)(1)(D) together with (b)(1)(E) suggests that, in (b)(1)(E), the legislature was concerned only with the time the child was placed. She argues that subsection (b)(1)(D) provides that two separate, distinct actions can lead to termination, placing a child in dangerous conditions or allowing the child to remain in dangerous conditions. She urges us to interpret subsection (b)(1)(E) as requiring the court to look only at the conduct of the relevant persons at the time R.J.N. was placed in C.B.'s home. She asserts the statute requires a finding that a child was placed into an environment that was dangerous at the time the child was placed there.

In construing a statute, we must look to the plain meaning of statutory text unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results. *PHI, Inc. v. Tex. Juvenile Justice Dep't*, 593 S.W.3d 296, 303 (Tex. 2019).

If a statute is clear and unambiguous, we apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *Id.* We look at the entire act, and not a single section in isolation. *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999).

Subsection (b)(1)(E) allows termination of the parent-child relationship if the parent engaged in conduct which endangers the physical or emotional well-being of the child. Because the statute is clear and unambiguous, we apply its words according to their common meaning. Subsection (b)(1)(E) does not specify the applicable time period. Other subsections reference a time period indicating that the legislature considered timing of the activity: (b)(1)(B)--at least three months; (b)(1)(C)—at least six months; (b)(1)(F)—one year; (b)(1)(H)—since birth; (b)(1)(J)(ii)—substantial length of time. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(B), (C), (F), (H), (J). C.N. would have us engraft new, limiting language into the statute. This, we decline to do. We may add words into a statutory provision only when necessary to give effect to clear legislative intent. *Fitzgerald*, 996 S.W.2d at 867. "Only truly extraordinary circumstances showing unmistakable legislative intent should divert us from enforcing the statute as written." *Id.* Thus, we consider all of C.N.'s conduct that may be relevant to the question of whether she endangered her son, not just her conduct at the time R.J.N. was placed in C.B.'s care.

We conclude that the evidence is sufficiently clear and convincing to support the trial court's finding under subsection (b)(1)(E). The trial court could have formed a firm

conviction that C.N. engaged in conduct which endangers the physical or emotional well-being of the child. The disputed evidence is not so significant that the factfinder could not have resolved it in favor of the finding. *See In re A.C.*, 560 S.W.3d at 631. Thus, the evidence is legally and factually sufficient to support the trial court's finding that termination is warranted under subsection (b)(1)(E). Because only one predicate finding is necessary for termination of parental rights, we need not address C.N.'s complaints regarding subsection (b)(1)(D) in her first issue or her complaint regarding subsection (b)(1)(O) in her third issue. *See* TEX. R. APP. P. 47.1; *In re N.G.*, 577 S.W.3d at 232. We overrule C.N.'s second issue.

BEST INTEREST FINDING

In her fourth issue, C.N. contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of the child. She asserts that she is doing everything she needs to do to become a productive member of society. Arguing that the Department failed to show by clear and convincing evidence that termination would be in R.J.N.'s best interest, C.N. claims that R.J.N. would benefit from a relationship with C.N. in the future.

The best-interest inquiry is child-centered and focuses on the child's well-being, safety, and development. *In re A.C.*, 560 S.W.3d at 631. The factfinder may consider several factors to determine the child's best interest, including: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and

future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The evidence need not prove all of the *Holley* factors in order to show that the termination of parental rights is in a child's best interest. *Id*. at 372.

Courts apply a strong presumption that the best interest of the child is served by keeping the child with the child's natural parents, and it is the Department's burden to rebut that presumption. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Prompt and permanent placement in a safe environment also is presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). When a child is too young to express his desires, the fact finder may consider that the child has bonded with the foster parents, is well cared for by them, and has spent minimal time with the parent. *In re V.A.*, 598 S.W.3d at 333.

The caseworker testified that R.J.N. is currently living in a foster home with his younger sister. He has bonded with the foster parents who hope to adopt R.J.N. and his sister. He is currently in a safe and stable environment where his emotional and physical

needs can be met. The foster parents hope to adopt R.J.N. and would continue to meet his needs in the future.

C.N. has a history of instability and poor parenting, having four children removed from her custody. While C.N. testified that she is currently attempting to comply with required services, the trial court could note that until recently she had not attempted to comply. A parent's lack of motivation to improve parenting skills supports a finding that termination is in the best interest of the child. *See Wilson v. State*, 116 S.W.3d 923, 925 (Tex. App.—Dallas 2003, no pet.). Furthermore, C.N. is not seeking custody of R.J.N.

C.N. has no relationship with R.J.N. and has not had any contact with him. Upon her release from jail, she focused on avoiding arrest, rather than focusing on her son. As analyzed above with respect to the trial court's subsection (b)(1)(E) finding, the evidence supports the finding that C.N. engaged in a course of conduct that endangered R.J.N.'s physical or emotional well-being. *See In re V.A.*, 598 S.W.3d at 333. Based on the evidence presented at trial, the trial court reasonably could conclude that this pattern of behavior would continue into the future notwithstanding C.N.'s testimony. Additionally, C.N. has a criminal history, including child endangerment and drug use. We may take into account a parent's continuing criminal history, past performance, and poor judgment. *See in re C.H.*, 89 S.W.3d at 28; *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). The record does not contain any evidence of factors that mitigate C.N.'s acts and omissions.

Based on the evidence presented at trial and an examination of the *Holley* factors, we conclude that the trial court could have reasonably formed a firm belief or conviction that termination of C.N.'s parental rights to R.J.N. was in his best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re A.C.*, 560 S.W.3d at 631. We find there is legally and factually sufficient evidence to support the trial court's best interest finding. We overrule C.N.'s fourth issue.

## Conclusion

We conclude that the evidence is legally and factually sufficient to support the trial court's Section 161.001(b)(1)(E) and best interest findings. We affirm the trial court's termination order.


STEVE SMITH
Justice

Before Chief Justice Gray
     Justice Johnson
     and Justice Smith
Affirmed
Opinion delivered and filed May 24, 2023
[CV06]

