

# NUMBER 13-19-00058-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

### IN THE INTEREST OF P.M., A CHILD

---

### On appeal from the County Court at Law No. 5
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Longoria

This appeal[1] concerns an order terminating appellant P.E.'s (Mother) parental

rights to P.M., her child.[2]  By three issues, Mother challenges the trial court's termination

---

[1] Intermediate appellate courts are required to finally dispose of parental-termination appeals within 180 days.  *See* TEX. R. JUD. ADMIN. 6.2(a).  Here, on March 26, 2018, appellant filed her notice of appeal with the district clerk of the trial court.  On June 15, 2018, the trial court signed the order of termination.  It wasn't until February 6, 2019, that this Court received appellant's amended notice of appeal, which had been filed with the district clerk.  On February 21, 2019, the trial court reporter filed the reporter's record in this Court.  On March 25, 2019, appellant's counsel filed an appellate brief.  On April 15, 2019, the Texas Department of Family and Protective Services filed its brief.

[2] Pursuant to rule of appellate procedure 9.8, we will utilize aliases throughout this opinion.  *See* TEX. R. APP. P. 9.8 (Protection of Minor's Identity in Parental-Rights Termination Cases and Juvenile Court

of her rights, arguing that: (1) the termination petition should have been dismissed because trial was not commenced within one year; (2) there was insufficient evidence to terminate her rights; and (3) termination was not in the best interest of the child. We affirm.

## I. BACKGROUND

The Texas Department of Family and Protective Services (the Department) filed its "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship" on October 27, 2014. The Department's petition argued that termination was in P.M.'s best interest, alleging multiple statutory termination grounds.[3] *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(A)–(G), (I)–(T) (West, Westlaw through 2017 1st C.S.).

P.M. was born in 2003. As alleged in the Department's affidavit in support of removal, the Department's involvement with Mother and P.M. began in 2012. From 2012 until February 2014, there were three instances of the Department's involvement; all case dispositions were "ruled out." Subsequently, on October 17, 2014, the Department received a report "alleging the neglectful supervision of child [P.M.] . . . by [Mother] . . . ." According to the affidavit, the report stated that:

> [P.M.] was currently living in a shed next to her grandmother's house. The report stated that [Mother] was afraid to go to the bus stop and feared for her life because she was recently beat up by her brother. [Mother] allegedly stated that when she contacted police, the police beat her up as well. [P.M.] had missed four days of school and a home visit was made to the house in which contact with the child was not possible. Upon receiving the report, the Department opened an investigation.

---

Cases).

[3] The Department also sought termination of A.G.'s (Father) parental rights. Father is not a party to this appeal.

According to her affidavit, Maria Bernal, a Child Protective Services investigator and a Department representative, attempted to make contact with P.M. at her school on October 23, 2014. The school informed Bernal that P.M. had not been present for over a week and had already missed many days of school. The school counselor told Bernal that "[Mother] does not appear to have it together and appears very paranoid." The Department was notified that there were "meth heads" living in the home with P.M., and that the shed P.M. lived in with Mother had no utilities.

Bernal's continued investigation revealed that Mother had tested positive for methamphetamines and marijuana in the hospital earlier in 2014. In conducting a home visit, Bernal met with R.M., Mother's brother, and R.M.'s girlfriend, F.P. Bernal believed F.P. to be under the influence of "substances" based on her behavior during their encounter. Bernal was unable to make contact with P.M. or Mother at that time.

The next day, Bernal made contact with Mother and was able to schedule a meeting. Mother and P.M. came to the Department and were interviewed. P.M. told the Department that she lived with her mother and did not know where her father was. P.M. said that she is in a special needs program at school. She further informed the Department about her home life, including that "the people in her home do not get along very well" and that she was aware there was drug use in the home. According to the affidavit, P.M. also stated that she is often hungry because her grandmother does not give her food because "she thinks [P.M.] is annoying." P.M. had also witnessed violence and fighting between Mother and R.M.

In front of P.M., Mother informed Bernal that "everyone in her family wants [Mother] to die." Mother expressed that she hated where she lived, and that she had been

3

physically and mentally abused by her family for over a year. Mother also stated that she was diagnosed with post-traumatic stress disorder (PTSD) but was not taking any medications. Mother admitted there were drugs being used in the household where she lived with P.M., and admitted that she had used methamphetamines, but denied an addiction or substance abuse problem.

As a result of her investigation and her meeting with P.M. and Mother, Bernal concluded that it was in P.M.'s best interest to be removed from Mother's care. On October 24, 2014, P.M. was removed from Mother's care by court order and the Department was named as temporary sole managing conservator of P.M.

After holding several hearings to review the temporary conservatorship appointment and placement of P.M., the trial court entered an order appointing the Department as permanent managing conservator of P.M. without terminating the parental rights of Mother. *See id*. § 263.404(a) (West, Westlaw through 2017 1st C.S.). Subsequently, the trial court conducted permanency hearings after the final order and continued to receive reports from the Department regarding P.M. *See id.* § 263.501(a) (West, Westlaw through 2017 1st C.S.).

In 2016, the Department filed a supplemental petition followed by a petition to modify seeking to terminate Mother's parental rights as to P.M. A bench trial was held and Mother's rights were terminated. This appeal followed.

## II.   FAILURE TO DISMISS

By her first issue, Mother argues that the Department's petition should have been dismissed because a trial on the merits did not commence within the one-year statutory

4

deadline. *See id*. § 263.401(a).[4]  Section 263.401(a) of the family code requires a trial court to dismiss the Department's suit affecting the parent-child relationship if a final order or extension has not been rendered within a year of the trial court's initial order appointing the Department temporary managing conservator. *Id.*  The trial court may maintain the suit for up to another 180 days if it finds that the Department's continued managing conservatorship is in the child's best interest, makes further temporary orders, schedules a new dismissal date within 180 days, and sets a final hearing before that date. *Id.* § 263.401(b).

The record shows that the trial court entered a temporary order appointing the Department as temporary managing conservator of P.M. on October 24, 2014.  After a hearing on September 23, 2015, the trial court entered a "Review Hearing Order and Order Appointing the Department as Permanent Managing Conservator" on November 19, 2015, in which the Department was appointed as permanent managing conservator of P.M. and Mother was allowed supervised visitations with P.M.[5]  A trial court may appoint the Department as managing conservator without terminating parental rights if it finds by a preponderance of the evidence that:

> (1) appointment of a parent would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development; and

---

[4] Sections 263.401 and 263.402 of the Texas Family Code were amended by the 85th Legislature. The last version of those amendments took effect September 1, 2017, and were to apply only to suits filed on or after September 1, 2017.  *See* Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 33, 2017 Tex. Gen Laws 713, 735.  The suit at bar having been filed in October of 2014 relieves us from the obligation of applying the changes here.  Instead, the controlling law is that existing when suit was filed. *In re T.W.*, 557 S.W.3d 841, 844 (Tex. App.—Amarillo 2018, pet. denied); *see also* TEX. GOV'T CODE ANN. § 311.025(b) (calling for resolution of conflicting amendments by providing that bill upon which the last legislative vote was taken controls).

[5] The "Review Hearing Order and Order Appointing the Department as Permanent Managing Conservator" is stamped "Received" on November 5, 2014, by the Nueces County District Clerk; however, it is signed by the trial court and hand dated November 19, 2015.

(2) it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

*Id*. § 263.404(a). Because the final order named the Department permanent managing conservator but did not terminate Mother's parental rights, the trial court continued to conduct permanency hearings. *See id*. § 263.501(a) ("If the department has been named as a child's managing conservator in a final order that does not include termination of parental rights, the court shall conduct a permanency hearing after the final order is rendered at least once every six months until the department is no longer the child's managing conservator."). The trial court rendered a final order as to the Department's 2014 petition on November 19, 2015. *See id*. § 263.404(a).

On July 27, 2016, Mother filed her motion to dismiss pursuant to § 263.402 of the family code. *See id*. § 263.402. But the final order naming the Department as permanent managing conservator of P.M. was entered over eight months prior to the filing of Mother's motion to dismiss. Therefore, Mother waived her right to object to the trial court's failure to dismiss the suit. *See id*. ("A party to a suit under this chapter who fails to make a timely motion to dismiss the suit under this subchapter waives the right to object to the court's failure to dismiss the suit. A motion to dismiss under this subsection is timely if the motion is made before the trial on the merits commences."); *see also In Interest of S.L.W.*, 529 S.W.3d 601, 607 (Tex. App.—Texarkana 2017, pet. denied) (holding Father waived his right to object to the court's failure to dismiss where no motion to dismiss was filed prior to the entry of the final order on the merits).

Mother's first issue is overruled.

### III.   INSUFFICIENT EVIDENCE

By her second issue, Mother argues that the evidence is insufficient to support the trial court's termination of her parental rights.

## A.      Standard of Review and Applicable Law

In order to terminate an individual's parental rights to her child, clear and convincing evidence must show:  (1) that the parent has engaged in one of the statutory grounds for termination and (2) that termination is in the child's best interest.  TEX. FAM. CODE ANN. § 161.001(b)(1); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).  The clear and convincing burden of proof has been defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *In re C.H.*, 89 S.W.3d at 23; *see* TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2017 1st C.S.).  Due process demands this heightened standard.  *In re E.N.C.*, 384 S.W.3d at 802 (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

> If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient. Rendition of judgment in favor of the parent would generally be required if there is legally insufficient evidence.

*In re J.C.F.*, 96 S.W.3d 266 (citations omitted).

A parental-rights termination decree must be based on at least one predicate statutory ground. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (affirming parental termination based on one predicate without reaching second predicate found by the fact-finder and challenged by parent). If multiple predicate grounds are found by the trial court, we will affirm if any one ground is supported by sufficient evidence because only one is necessary for termination of parental rights. *In re T.N.F.*, 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied). Therefore, to prevail on appeal, a party must challenge the sufficiency of each affirmative finding of a predicate ground for termination or at minimum challenge the best interest finding. *In re S.N.*, 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.).

## B. Analysis

Here, the trial court found by clear and convincing evidence that Mother:

(1) "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D)

(2) "engaged in conduct or knowingly placed the child with person who engaged in conduct which endangers the physical or emotional well-being of the child," *see id.* § 161.001(b)(1)(E) and

(3) "failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." *See id.* § 161.001(b)(1)(O).

We address Mother's challenge to the sufficiency of the evidence supporting a finding under subsection 161.001(b)(1)(E) first because it is dispositive.

Under subsection (E), we consider whether evidence exists that the endangerment of the child's physical and emotional well-being directly resulted from the parent's conduct, including acts, omissions, or failures to act. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In this context, "endanger" means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477; *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Termination under subsection 161.001[(b)](1)(E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth.

As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment under subsection (E). Likewise, illegal drug use may support termination under subsection 161.001(1)(E) because it exposes the child to the possibility that the parent may be impaired or imprisoned. A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. Additionally, a fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs.

*In re E.R.W.*, 528 S.W.3d at 264–65 (internal citations and quotations omitted).

The Department presented evidence that, during the course of its investigation, Mother admitted to drug use, specifically methamphetamines, and had a prior criminal history. Mother denied any drug use at the time of trial. Mother also admitted to a history of family violence, her belief that her family was trying to kill her, and instability at the home where she resided with P.M. From the investigation, the Department presented evidence that P.M. and Mother lived in a shed on the property without basic utilities, that Mother did not take P.M. to school, that there was drug and alcohol abuse on the property, and family violence in the home.

At trial, Mother testified that for a short time during the pendency of the case, she was homeless. She is now living alone in her family's home and is unemployed, though she testified that she is a student. Mother admits that she relies on her own mother, N.M., to support her financially and that she is only able to contribute with her art sales and any winnings from when she plays the lottery or bingo.

While Mother testified that she and N.M. had and have always had a great relationship, the Department elicited evidence, including the following text messages from Mother to the Department's caseworker, Elizabeth Davis:

> [N.M.] is behind all of this 'cause [sic] she's the one that had me almost killed by her and my sister making false report to police. Too closely killing me in front of my child.

> Yesterday, at my abusive mother's house, [N.M.] yelled nonstop and cursed me out in front of [P.M.] when I dropped off lice shampoo. [P.M.] got scared.

> [P.M.] has witnessed [N.M.] abuse me in every way. [N.M.] is abusive to [P.M.] as last year she didn't want to buy food to my child while I was at work.

> [N.M.] is the worst candidate to be a temporary conservator. She could care less about my child.

Mother testified that during the pendency of this case, she had been incarcerated "a few times," which included a conviction for assault on a public servant, a felony. *See* TEX. PENAL CODE ANN. § 22.01(b) (West, Westlaw through 2017 1st C.S.). The Department presented evidence that Mother also had three prior arrests for driving while intoxicated. *See id*. § 49.04 (West, Westlaw through 2017 1st C.S.). Aaron Rhyne met with Mother for her psychosocial assessment and testified that Mother mentioned that she has been "hassled" and followed by the police for years, suggesting to him a potential issue with paranoia.

Victoria Moore, P.M.'s guardian ad litem, testified that she had met with Mother several times during the pendency of the case. Moore testified that she visited Mother in jail and that Mother was aggressive and yelled at her during the visits. Davis, the Department's caseworker, also testified that Mother was angry and argumentative, a "very challenging client," and that trying to work with Mother had been very difficult. Davis required security to be there for the visits because she was afraid of Mother based on her behavior. Davis described Mother as "unpredictable" and testified that Mother had called her derogatory names, used foul language, and cussed at her.

The record demonstrates that Mother subjected P.M. to a life of instability and uncertainty and did not provide for P.M.'s basic needs. Mother's troubled conduct existed before and after the case began. Based on our review of the entire record showing Mother's criminal history, especially her arrests during the pendency of the case, her history of methamphetamine use, the violent home in which she lived with P.M., her aggressive tendencies, and her inability to consistently maintain employment and housing, we conclude that the evidence is sufficient to establish a firm conviction in the

11

mind of the trial court that Mother engaged in conduct that endangered the physical or emotional well-being of the child. *See In re A.R.O.*, 556 S.W.3d 903, 911 (Tex. App.—El Paso 2018, no pet.); *In re E.R.W.*, 528 S.W.3d at 266. Because we determine that there was sufficient evidence supporting subsection (E), we need not reach Mother's challenges to the trial court's findings under subsections (D) or (O). *See In re A.L.*, 389 S.W.3d 896, 901 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Mother's second issue is overruled.

## IV. BEST INTEREST OF THE CHILD

In her third and final issue, Mother argues that the evidence was factually insufficient to prove that termination was in the best interest of P.M.

### A. Standard of Review

Under Texas law, the parent-child relationship may be terminated upon a finding supported by clear and convincing evidence that the parent engaged in certain conduct specified in § 161.001 and termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1),(2); *In re C.H.*, 89 S.W.3d at 23. Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). A best-interest analysis may be based on direct evidence, circumstantial evidence, subjective factors, and the totality of evidence. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.); *see In re S.H.A.*, 728 S.W.2d 73, 86–87 (Tex. App.—Dallas 1987, writ ref'd n.r.e.).

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings and not supplant its judgment with our own. *In re H.R.M.*, 209

12

S.W.3d 105, 108 (Tex. 2006) (per curiam). We must determine whether, on the entire record, a fact finder could reasonably form a firm conviction or belief that termination of the parent-child relationship would be in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(2); *In re C.H.*, 89 S.W.3d at 26. The evidence is factually insufficient if the disputed evidence that a reasonable fact finder would not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction in the truth of its finding. *In re H.R.M.*, 209 S.W.3d at 108.

## B. Applicable Law

A determination of best interest necessitates a focus on the child, not the parent. *See In re R.F.*, 115 S.W.3d 804, 812 (Tex. App.—Dallas 2003, no pet.). There is a strong presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131(b) (West, Westlaw through 2017 1st C.S.); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The fact finder may consider a number of factors in determining the best interest of the child, including the following: the desires of the child, the present and future physical and emotional needs of the child, the present and future emotional and physical danger to the child, the parental abilities of the person seeking custody, programs available to assist those persons in promoting the best interest of the child, plans for the child by those individuals or by the agency seeking custody, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive, and there is no requirement that the Department prove all factors as a condition precedent to termination. *In re C.H.*, 89 S.W.3d at 27. In some cases, undisputed evidence of just one factor may

13

be sufficient to support a finding that termination is in the best interest of the child. *Id.*

Because of the importance of parental rights, and the severity and permanency of termination, the quantum of proof required in a termination proceeding is elevated from a preponderance of the evidence to clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 475, 747 (1982); *accord Holick v. Smith*, 685 S.W.2d 18, 20–21 (Tex. 1985); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *In re D.S.P.,* 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.). "Clear and convincing evidence" means the measure or degree of proof that "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2017 1st C.S.); *see In re J.F.C.*, 96 S.W.3d at 263.

## C.   Analysis

With regard to the child's desires, P.M. testified that she did not wish to be returned to Mother's care and she did not want visitation with Mother. At the time of the trial in 2018, P.M. was fourteen years old. P.M. explained that while she once missed Mother, she no longer does, and P.M. believes that Mother is not going to change. She based her opinion on Mother's incarceration during the pendency of the case. She stated that she understood what termination means and though she did not deny that she wanted to be reunited with Mother in the past, P.M.'s testimony did not waver as to her desires to terminate Mother's rights. P.M. explained that she is doing well in foster care, her grades have improved, she is involved in many extracurricular activities, and she is happy. P.M. did not wish to speak to her mother at the trial and had ended visits for two years prior to the trial. This factor weighs in favor of the best interest finding.

14

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *See In re D.L.N.*, 958 S.W.2d 934, 939 (Tex. App.—Waco 1997, pet. denied). As determined in our review of Mother's second issue, the evidence at trial established that Mother engaged in conduct which endangered the physical and emotional well-being of P.M. A parent's criminal conduct and drug use may support a finding that termination is in the best interest of the child. *See In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.) (stating that a fact finder can give "great weight" to the "significant factor" of drug-related conduct); *see also In re B.G.*, No. 14-14-00729-CV, 2015 WL 393044, at *7 (Tex. App.—Houston [14th Dist.] Jan. 29, 2015, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming the decision that termination was in the best interest of a child). Mother's history of drug use and criminal activity bespeaks a course of conduct that the fact finder could reasonably conclude endangers P.M.'s well-being. Mother admitted to using methamphetamines around the time of P.M.'s removal, and the evidence established Mother had been arrested "a few times" and incarcerated for assault on a public servant during the pendency of the case. Based on the evidence, the trial court could have determined that the second and third factors weigh heavily in support of the best interest finding.

The fourth factor evaluates the parenting abilities of the individuals seeking custody. *Holley*, 544 S.W.3d at 371–72. The sixth and seventh factors examine the plans for the child by those individuals or the agency seeking custody, and the stability of the home or proposed placement. *Id.* The proposed placement and the stability of the home

environment is also an important consideration in determining whether termination of parental rights is in a child's best interest. *See In re E.R.W.*, 528 S.W.3d at 267. Mother testified that she is currently unemployed and relies on N.M. for financial stability. She further testified that she was homeless for some period of time during the pendency of the case, though she now resides in her family's home. Texas courts recognize as a paramount consideration in the best-interest determination the child's need for permanence through the establishment of a "stable, permanent home." *Id*. (citing *In re K.C.*, 219 S.W.3d at 931). The record reflects that Mother has not secured any stable employment nor has her housing remained stable. Without the assistance of family, Mother would be unable to provide for P.M.

In contrast, Kristie Reynolds, P.M.'s counselor, testified that P.M. was "doing awesome" since removal, and that P.M. was comfortable in her current home. Reynolds stated that P.M. has improved socially and academically since leaving her Mother's care. Moore also testified that P.M. has drastically changed for the better from the time of removal until the time of trial. Moore stated that P.M. has gained basic life skills and has been making strides academically and with her chores since moving into foster care. During P.M.'s own testimony, many certificates of achievement and letters of recommendation were entered into evidence, all of which P.M. earned while in foster care. While the Department did not have a permanent placement set up, that is not necessary at the time of termination. *See In re C.H.*, 89 S.W.3d at 28 ("[T]he lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located."). "Instead, the inquiry

16

is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest—even if the agency is unable to identify with precision the child's future home environment." *Id.* The fact finder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *In re A.R.O.*, 556 S.W.3d at 913. These factors weigh in support of the best interest finding.

The fifth factor looks at the programs available to assist those individuals to promote the child's best interest. *Holley*, 544 S.W.3d at 371–72. The Department created, and the trial court adopted, a family service plan for Mother which contained various programs. Mother did not comply with her family service plan, though she testified that she was utilizing programs not specified on the service plan. Mother testified that she was attending counseling, alcohol and substance abuse courses, and attempting to manage her depression. The Department caseworker was unaware of Mother's attendance at these programs, or the credibility of said programs, and therefore found Mother to be non-compliant with the family service plan. This factor is neutral as to the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. *Id*. The evidence established that Mother endangered P.M. by failing to provide a safe and stable home for her, living with drug users, domestic violence, failing to take her to school, and through Mother's multiple arrests. Based on this evidence, this factor weighs in favor of the trial court's best interest finding.

The ninth factor is whether there is any excuse for Mother's acts or omissions. *Id.* Mother does not specifically address this factor. This factor supports the best interest finding.

Having reviewed all of the *Holley* factors, we conclude that the evidence is factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in P.M.'s best interest.

Mother's third issue is overruled.

### V.    CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Delivered and filed the
9th day of May, 2019.