

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00038-CV

_____

### IN THE INTEREST OF J.S. AND K.H., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 19C0207-CCL

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

The Department of Family and Protective Services (the Department) filed a petition to terminate Father's parental rights to his two-year-old daughter, K.H.[1]  The trial court terminated Father's parental rights after finding that (1) he knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered her physical or emotional well-being, (2) he engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered her physical or emotional well-being, (3) he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the child's return after she had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of her removal for abuse or neglect, (4) his parental rights to another child were previously terminated based on a finding that his conduct violated Grounds D or E or substantial equivalent provisions of the law of another state, and (5) termination of Father's parental rights was in the best interests of K.H.  K.H.'s mother voluntarily relinquished her parental rights and does not appeal the trial court's order terminating them.[2]  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (M), (b)(2) (Supp.).

On appeal from the termination of his parental rights, Father argues that the evidence is legally and factually insufficient to support the trial court's findings.  Because we find the evidence sufficient to support both the trial court's findings on predicate Grounds D and E and

---

[1]To protect the confidentiality of the child involved, we refer to all parties by either initials or pseudonyms. *See* TEX. R. APP. P. 9.8(b)(2).

[2]This termination proceeding also involved another child, three-year-old J.S., whose father remained unknown at the time of trial.

its conclusion that terminating Father's parental rights was in the child's best interest, we affirm the trial court's judgment.

## I.    Factual and Procedural Background

At trial, Erica Young, an investigator with the Department, testified that she became involved in the case after receiving reports that Father, a drug-dealer, and Mother were both using methamphetamine. Young said that, while Father refused to take a drug test, both J.S. and K.H. tested "positive for some illegal substances." According to Young, Father had two other children who were adopted after his parental rights were terminated due to "concerns for domestic violence."[3] Young also testified that Father was previously charged with possession of marihuana and assault causing bodily injury.

Chantel Finley, the Department's conservatorship worker, testified that Father was incarcerated at the beginning of the case for child endangerment of J.S. and K.H. after they tested positive for drugs, but was placed on community supervision in August 2019. Finley testified at the June 2020 trial that Father had not completed much of his court-ordered family-based service plan, but cross-examination showed that Father had been incarcerated for several months at a Substance Abuse Felony Punishment Facility (SAFPF). Mother, who was ordered into drug rehabilitation, relapsed after her release and was incarcerated at the time of trial.

Father informed the trial court that he was incarcerated not only for child endangerment, but also for possession of a controlled substance and possession of a firearm. He testified that he

---

[3]The Department introduced a judgment terminating Father's parental rights to another child, J.H., after the trial court found that Father had violated Ground O. The Department did not introduce a judgment terminating Father's parental rights to his other daughter or a judgment terminating parental rights in a prior case based on Grounds D or E or substantially equivalent provisions of the law of another state.

smoked drugs in the home where J.S. and K.H. lived and that, "if anybody's in the house, they're going to get drugs in their system." Father said he was incarcerated for the nine months preceding trial, had a projected release date in July 2020, and planned to live with a cousin after his release, but Patricia Smith, the Court Appointed Special Advocate (CASA), testified that Father currently had no income and could not provide the children with a safe and stable home. Father also testified about the classes and mandatory programs he was participating in while in SAFPF. Even though he admitted that he had a long-time problem with drugs, Father testified that he loved K.H. and promised the court that he would never take drugs again.

Finley and Smith testified that K.H. was thriving in a foster care that was meeting her emotional and physical needs after her removal from Mother and Father and that termination of their parental rights was in the child's best interest. Finley added that K.H.'s half-sister, J.S., was also doing well in foster care and that both children were "having pre-placement visits in an adoptive home."

After hearing this evidence, the trial court terminated Father's parental rights.

## II. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at

4

trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007 (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009))). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have

reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002))). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266). "'[I]n making this determination,' we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *C.H.*, 89 S.W.3d at 26)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental

6

rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26)).

## III.     Sufficient Evidence Supported the Trial Court's Ground D and E Findings

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *A.V.*, 113 S.W.3d at 362) (citing *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.))). Even so, in *In re N.G.*, the Texas Supreme Court held that due process demands that we review the evidence supporting findings under Grounds D and E when they are challenged on appeal because termination of parental rights under these grounds "may have implications for . . . parental rights to other children." *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam). As a result, we focus our analysis on Grounds D and E.

### A.     Termination of Parental Rights Under Ground D

Ground D permits a predicate finding on proof that a parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Under this ground, "we must examine the time before the . . . removal to determine whether the environment itself . . . [endangered] the physical or emotional well-being of the child." *In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531,

7

533 (Tex. 1987); *L.E.S.*, 471 S.W.3d at 923; *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.).

"It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *L.E.S.*, 471 S.W.3d at 923. "A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards." *In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.). "[S]ubsection (D) permits termination [of parental rights] based on a single act or omission [by the parent]." *L.C.*, 145 S.W.3d at 797; *see In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied).

Here, Father's testimony showed that he knowingly placed K.H. in an environment that endangered her physical well-being. Father admitted that he smoked illegal drugs in the home where K.H. lived. He was aware that doing so would endanger K.H.'s health because he confessed that, "if anybody's in the house, they're going to get drugs in their system." Because of Father's behavior, K.H. tested positive for illegal substances, and Father was arrested for endangering K.H. and J.S.

Based on the fact that "illegal drug use by a parent . . . supports the conclusion that the child[]'s surroundings endanger their physical or emotional well-being," we find the evidence legally and factually sufficient to support the trial court's Ground D finding. *L.E.S.*, 471 S.W.3d at 925 (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)); *see N.B.*, 2013 WL 1605457, at *9.

8

**B. Termination of Parental Rights Under Ground E**

Ground E requires a finding that a parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.00(b)(1)(E). Under Ground E, "it is sufficient that the child's well-being is jeopardized or exposed to loss or injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 367). Termination under this ground must "be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.))); *see Boyd*, 727 S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 366–67. "The conduct to be examined includes what the parent did both before and after the child was born." *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied).

"[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct." *In re J.L.B.*, 349 S.W.3d 836, 848 (Tex. App.—Texarkana 2011, no pet.) (quoting *N.S.G.*, 235 S.W.3d at 367–68); *see In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."). "Because it exposes the child to the

9

possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001[b](1)(E)." *Walker v. Tex. Dep't Family & Protective Servs.*, 312 S.W.3d 608, 617–18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

Also, although "imprisonment, standing alone, is not conduct which endangers the physical or emotional well-being of the child, 'intentional criminal activity which expose[s] the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child.'" *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied) (quoting *L.E.S.*, 471 S.W.3d at 924 (quoting *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (per curiam))).

Father testified that his mother was a drug-addict, that his father was an alcoholic, that he had a long-time addiction to drugs, and that drugs were "all [he] knew." He continued, "That's all I grew up around." Father had previously been arrested for possession of drugs, assault, and unlawful possession of a firearm and had lost his parental rights to other children. As a result of his drug use in the home, Father endangered K.H.'s and J.S.'s well-being and was incarcerated for child endangerment. He also knowingly placed K.H. in the care of Mother, a drug addict who had relapsed before trial. Father's incarceration, unemployment, and inability to provide K.H. with a safe and stable home were all consequences of his drug use. Considering these facts, in addition to those discussed in our Ground D analysis, we find the evidence legally and factually sufficient to show that Father engaged in conduct that endangered K.H.'s physical well-being.

Because we find the evidence sufficient to support the trial court's Grounds D and E findings, we overrule Father's points of error challenging the findings on statutory grounds.

## IV.     Sufficient Evidence Supports the Best-Interest Finding

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (Supp.). Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

The evidence at trial showed that Father loved K.H., who was too young to express her desires. As a result, we find the first *Holley* factor neutral. *See In re H.C.*, 602 S.W.3d 654

(Tex. App.—Texarkana 2020, no pet.) (citing *In re S.L.W.*, 529 S.W.3d 601, 613 n.9 (Tex. App.—Texarkana 2017, pet. denied)).

As for the second and third *Holley* factors, K.H. was two at the time of trial, and "young children require a great deal of time, attention, and protection." *In re L.W.*, No. 06-20-00012-CV, 2020 WL 4680284, at *9 (Tex. App.—Texarkana Aug. 13, 2020, no pet. h.). Yet, the evidence showed that Father could not meet K.H.'s emotional and physical needs and had instead endangered her by his drug use. We find that the second and third *Holley* factors support termination of Father's parental rights.

Next, evidence of prior terminations of Father's parental rights to other children and his drug use in the home where K.H. lived showed that Father lacked the parental abilities required to care for the child. Although there were several programs to assist Father in SAFPF, the evidence showed that Father had not completed several portions of the family service plan, including parenting classes that were available in SAFPF. Father's long-term drug history, prior criminal and CPS history, placement of K.H. with Mother, failure to complete the family service plan, and knowing endangerment of K.H. showed that his relationship with K.H. was not proper. As a result, we find the fourth, fifth, and eighth *Holley* factors against Father.

Father testified that he planned to get a job and an associate degree while living with a cousin who was "somewhere in Texarkana" after his release from SAFPF but did not testify that K.H. could also live with his cousin. In fact, Father did not offer a plan for K.H.'s living arrangements or care, and the instability of his home was demonstrated by his past actions. On the other hand, K.H. was placed with J.S. in an appropriate foster home, and the Department's

plan was for both children to be adopted together in another home. We find that the sixth and seventh *Holley* factors weigh in favor of terminating Father's parental rights.

While Father cited his incarceration as the reason for failing to complete the family service plan, Finley testified that, in spite of his incarceration, Father could have, but failed to, take a drug test, participate in parenting classes, or start counseling. We find that the remaining *Holley* factor favors terminating Father's parental rights.

We conclude that the Department established, by clear and convincing evidence, that terminating Father's parental rights was in K.H.'s best interest. As a result, we overrule Father's last point of error.

## V.     Conclusion

We affirm the trial court's judgment.


                                              Ralph K. Burgess
                                              Justice


Date Submitted:      September 29, 2020
Date Decided:        September 30, 2020